IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

\*

vs.    Case No.  19-cr-00286-ELH-3

\*

Brian Blackston

\*

\*\*\*\*\*\*

**MEMORANDUM AND ORDER**

On June 17, 2020, Defendant filed a Motion to Reopen Detention Hearing seeking to reargue the issue of his detention due to the unanticipated and material change in circumstances brought about by the COVID-19 pandemic pursuant to § 3142(f))(2)(B) of the Bail Reform Act, 18 U.S.C. § 3141, *et seq*. (the "BRA").  (ECF No. 538).  Defendant's argument is that, given the increased risk of spread of the virus in a custodial situation like the Chesapeake Detention Facility ("CDF") where he is currently detained pending trial, and given his potential susceptibility to complications should he contract the virus, he should be released to home confinement.  *Id*. at 1.  On June 22, 2020, the Government filed its Response in Opposition.  (ECF No. 544).  On June 23, 2020, Defendant filed a Reply.  (ECF No. 550).  The Court finds that no hearing is necessary.  Defendant's motion is **DENIED**.  Following is the Court's rationale.

Defendant was originally ordered detained by the Court following a detention hearing on September 30, 2019.  (ECF No. 315).  The COVID-19 pandemic had not yet emerged.  This Court has previously recognized under similar circumstances that the COVID-19 pandemic does meet the requirements of § 3142(f)(2)(B) so as to justify the Court revisiting the detention issue. *See, e.g., United States v. Martin*, 2020 WL 1274857 (D.Md.; March 17, 2020).    Though the

pandemic is therefore a valid factor in the Court's detention analysis, it is not the only factor, and must be considered within the overall framework of the BRA.

The BRA focuses the Court's pretrial detention inquiry on two issues: (1) a defendant's risk of nonappearance; and (2) the danger that the defendant's release would pose to other individuals. *Id*. at § 3142(f). Congress then specified the criteria that this Court must weigh when assessing those two issues. *See* 18 U.S.C. § 3142(g). As this Court recently observed, none of those factors refers specifically to whether the conditions of detention threaten the defendant's well-being given his health status. *United States v. Gallagher*, 19-479-SAG (ECF No. 34; 5/22/20); *United States v. Thompson*, 2020 WL 2839095 (D.Md.; June 1, 2020).

As noted in *Thompson*, *supra*, at *2, a defendant's physical condition can nonetheless be relevant to a § 3142(g) assessment as it relates to assessing his propensity to appear and/or potentially endanger others, or might alternatively support temporary release under Section 3142(i) under appropriate circumstances. *See, e.g., United States v. Creek,* 19-036-CCB (ECF No. 421; May 1, 2020) (granting temporary release from the D.C. Jail complex due to defendant's underlying health conditions). In the former, physical condition is weighed along with the other 3142(g) factors as they relate to risk of nonappearance and danger a defendant's release would pose to the community. In the latter, the burden is on a defendant to show that those health concerns are "compelling," outweigh the other 3142(g) factors, and that the defendant's release does not, in turn, pose an increased health risk to the community. *See, e.g., United States v. Clark,* 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020); *see also*, *Creek, supra,* ECF 402 (April 15, 2020) (directing the District Court to consider "in the first instance the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and

whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i).").

Accordingly, the Court will address the factors set forth in § 3142(g) as they relate to risk of nonappearance and the danger release would pose to the community, and, alternatively, will consider temporary release under § 3142(i), both in the setting of COVID-19.

1. Section 3142(g) Analysis

Defendant is indicted in a drug conspiracy involving greater than one kilogram of heroin and fentanyl, and greater than five kilograms of cocaine. (ECF No. 96). The charges carry a rebuttable presumption of detention pursuant to § 3142(e)(3). Thus, the nature and circumstance of the offense charged are serious.

At the detention hearing, the Government supported its proffer with wiretap evidence of calls between Defendant and co-conspirators arranging for drug sales and, in some cases, the provision or sale of firearms. (ECF No. 315). The Government summarizes that evidence again in its Opposition. (ECF No. 544 at 5-6).

In terms of his criminal history, among other convictions, Defendant has a prior weapons conviction for having a handgun on his person and two prior felony drug distribution convictions. *Id*. at 6-7. The Court noted at Defendant's detention hearing that Defendant has six prior violations of supervised release, violating in all but one of his convictions, and was on supervised release at the time of the instant alleged offense. (ECF No. 315). Pretrial Services also supported his pretrial detention. *Id*.

Based on the above, this Court found that Defendant had failed to rebut the presumption of detention and found by clear and convincing evidence at the hearing, that no condition or combination of conditions could reasonably assure the safety of the community should defendant be released. *Id*.

The basis of Defendant's motion is not the re-weighing of the above factors that were already analyzed by the Court in its original detention decision. Rather, Defendant's "new and material" information relates to the COVID-19 pandemic. Defendant cites a communication that seven correctional officers at CDF have tested positive for COVID-19, although that communication indicates that six of the seven had social connections outside of work. (ECF No. 538-1 at 3). Defendant further argues that he has asthma, which puts him at increased risk for complications should he contract the virus. (ECF No. 538 at 1). The Court does not find that either of these arguments alters its previous § 3142(g) analysis.

To begin with, although the Centers for Disease Control does note that those suffering with "moderate to severe" asthma may be at increased risk for complications should they contract COVID-19 (ECF 538-1 at 1), Defendant's medical records indicate that his asthma was assessed as "mild and intermittent" in 2017, "stable and intermittent," in June of 2019, "stable" in December of 2019. (ECF 540 at 14, 20 and 55). This does not give the Court any confidence that COVID-19 concerns would significantly enhance Defendant's compliance with release conditions so as to offset the risks raised by the other 3142(g) factors noted above, especially given his prior poor track record on supervision.

2. Section 3142(i) Analysis

As outlined in *Clark*, *supra*, a court's analysis in assessing whether a defendant has proven a "compelling" reason for temporary release in the setting of COVID-19 involves determining whether the health risk to a defendant from his continued detention outweighs both the traditional § 3142(g) factors and the health risk to the community that he would pose if released. Looking at Defendant's specific health risk, as noted above, Defendant does not provide support for his assertion that he is at increased risk for complications should he contract the virus. Moreover, although it is certainly true that those in a custodial situation such as a

detention facility are at increased risk of contracting the virus, CDF has taken a comprehensive set of precautionary measures to protect its staff and its residents, as outlined in great detail by the Government. (ECF No. 544 at 10-13). As of June 19, 2020, the Maryland Department for Public Safety and Correctional Services who runs CDF under contract to the United States Marshals Service reports one positive case among its detainees,[1] now more than three months into the pandemic. *See* new.maryland.gov/dpscs/COVID-19 (last visited 6/19/20). Thus, whatever measures are being taken have been adequate to protect the detainees at CDF relative to their counterparts. In short, Defendant has not carried his burden under § 3142(i) to demonstrate that any risk to his health outweighs the § 3142(g) factors. Moreover, given Defendant's prior poor performance on community supervision, the Court is not confident that he would comply with directives of government officials and public health experts relative to COVID-19 precautions should he be released.

     Accordingly, Defendant's Motion is **DENIED**.

6/23/2020  
Date

J. Mark Coulson  
United States Magistrate Judge



---

[1] The Government notes in its Opposition that their technically have been two cases among CDF inmates, although one of those inmates tested positive prior to arriving at CDF but tested negative twice once at CDF. (ECF No. 544 at 9.